UNITED STATES DISTRICT COURT<br>WESTERN DISTRICT OF TEXAS<br>SAN ANTONIO DIVISION

**FILED**
January 16, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____CM_____
DEPUTY

| | |
|---|---|
| LAURA ALEJANDRA CAMACHO-GUTIERREZ, § § § Petitioner-Plaintiff, § v. § 5:25-CV-01876-MA § ROSE THOMPSON, et al, § § Respondents-Defendants. § | |

## OPINION AND ORDER

The Court now considers Petitioner Laura Alejandra Camacho-Gutierrez's "Petition for Writ of Habeas Corpus."[1] Petitioner, who is currently in immigration detention, alleges that Respondents are holding her in unlawful custody cognizable in habeas corpus under 28 U.S.C. § 2241 and seeks immediate release.[2] Upon reviewing the petition, response, and applicable law, the Court **GRANTS** Petitioner's writ.

### I.   Factual Background

Petitioner is a citizen and national of Columbia who entered the United States on or about March 15, 2023.[3] Petitioner was detained at the time of her entry by the Department of Homeland Security (DHS) and placed into expedited removal proceedings under 8 U.S.C. § 1225(b)(1).[4] On April 5, 2023, DHS determined that Petitioner had a credible fear of torture if she was returned to Columbia, and subsequently placed her into full removal proceedings pursuant to 8 U.S.C. §

---

[1] Dkt. No. 1.
[2] Dkt. No. 1, at 2.
[3] Dkt. No. 1, at 5.
[4] Dkt. No. 1, at 5.

1229a.[5] Petitioner was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5) on April 12, 2023.[6] This parole is set to expire on June 2, 2026.[7] Petitioner filed an application for asylum on March 8, 2024,[8] which remains pending.

Despite Petitioner's active parole status, she was re-detained by DHS on December 1, 2025 "without notice and without being given any legally cognizable reason for her detention."[9] Petitioner asserts that this re-detainment: (1) violates DHS's own regulatory and statutory requirements for re-detaining individuals on humanitarian parole; and (2) violates her due process rights.[10]

Respondents argue that Petitioner is detained under 8 U.S.C. § 1225(b)(1)(B)(ii), which provides that when "[DHS] determines at the time of the interview that an alien has a credible fear of persecution . . . the alien *shall* be detained for further consideration of the application for asylum."[11] Interpreting this language to mean that detention for individuals with pending asylum applications is always mandatory, Respondents argue they are enforcing the statute's "nondiscretionary" requirements.[12]

Respondents additionally argue that Petitioner's re-detainment does not violate her due process rights because "it is a discretionary decision for [DHS] to grant release on humanitarian parole . . . and DHS can revoke it."[13] Even if Petitioner's procedural due process rights were

---

[5] Dkt. No. 1, at 5-6; Dkt. No. 1, Exh. 5.
[6] Dkt. No. 1, Exh, 5,
[7] Dkt. No. 1, Exh. 1, at 4.
[8] Dkt. No. 1, Exh. 3.
[9] Dkt. No. 1, at 6.
[10] Dkt. No. 1, at 15.
[11] Dkt. No. 8, at 2; Immigration and Nationality Act § 235(b)(1), 8 U.S.C. § 1225(b)(1) (emphasis added).
[12] Dkt No. 8, at 3.
[13] Dkt. No. 8, at 6.

violated, Respondents argue, release would not be appropriate because "the remedy is substitute process."[14]

## II.     Jurisdiction

A writ of habeas corpus is used to challenge an arrest, commitment, detention, extradition, bail, or the jurisdiction of a criminal sentence.[15] Under 28 U.S.C. § 2241, district courts may hear habeas corpus challenges to the legality of the detention of aliens.[16] Petitioner is detained in the Karnes County Immigration Processing Center in Karnes City, Texas, within the Western District of Texas.[17]

Respondents claim that this Court lacks jurisdiction to review this petition because the circumstances of Petitioner's mandatory detention are related to her removal proceedings.[18] Respondents point to two statutes to support their argument: 8 U.S.C. § 1252(g), and 8 U.S.C. § 1252(b)(9).

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."

Section 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have

---

[14] Dkt. No. 8, at 7.
[15] *See Habeas Corpus*, BLACK'S LAW DICTIONARY (11th ed. 2019); 28 U.S.C. § 2241.
[16] *Rasul v. Bush*, 542 U.S. 466, 473 (2004); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 117 (2020) ("The writ . . . provide[s] a means of contesting the lawfulness of restraint and securing release.");
[17] Dkt. No. 1, at 2.
[18] Dkt. No. 8, at 4–5.

jurisdiction, by habeas corpus . . . , or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

Respondents argue that interpreting these statutes to bar Petitioner's claim does not jeopardize Petitioner's due process rights because she retains the opportunity to be heard by an immigration judge on her underlying removal proceedings.[19]

Thorough analysis has been done by the Western District of Texas,[20] other district courts,[21] the Fifth Circuit,[22] and the Supreme Court,[23] and almost all have concluded that the statutes Respondents cite do not limit district court's ability to review petitions challenging Respondents' statutory authority to detain similarly situated Petitioners under § 1225. Petitioner challenges the constitutionality of the statutory framework by which her detention without bond under § 1225 has been mandated "without any process or individualized reasons."[24] She is not challenging "a decision to commence removal proceedings, adjudicate a case against [her], or execute a removal order."[25] Further, there is no available administrative proceeding through which Petitioner can

---

[19] Dkt. No. 8, at 5–6.
[20] *Santiago v. Noem*, No. EP-25-CV-361-KC, 2025 WL 2792588, at *7 (W.D. Tex. Oct. 2, 2025); *Urquiza-Orozco v. Bondi*, No. SA-25-CV-1428-XR, slip. Op., at *4–5 (W.D. Tex. Nov. 18, 2025).
[21] *See, e.g., Lopez Santos v. Noem*, No. 3:25-CV-01193, 2025 WL 2642278 (W.D. La. Sept. 11, 2025); *Guevara v. Swearingen*, No. 25 C 12549, 2025 WL 3158151, at *2 (N.D. Ill. Nov. 12, 2025); *Beltran v. Noem*, No. 25CV2650-LL-DEB, 2025 WL 3078837, at *3 (S.D. Cal. Nov. 4, 2025). *Escobar Salgado, et al. v. Mattos, et al.*, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356, at *8 (D. Nev. Nov. 17, 2025);
[22] *Texas v. United States*, 126 F.4th 392, 417 (5th Cir. 2025) (finding that § 1252(b)(9) "does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined."); *Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000) (finding that § 1252(g) "does not bar courts from reviewing an alien detention order"); *Duarte v. Mayorkas*, 27 F.4th 1044, 1055 (5th Cir. 2022) (finding that § 1252 (b)(9) should not bar courts from reviewing a detention order "where review of any agency determination involves neither a determination as to the validity of [an immigrant's] deportation orders or the review of any question of law or fact arising from their deportation proceedings."); Duron v. Johnson, 898 F.3d 644, 647 (5th Cir. 2018) (quoting Aguilar v. ICE, 510 F.3d 1, 10 (1st Cir. 2007)) (Finding that § 1252(b)(9) "does not ... 'sweep within its scope claims with only a remote or attenuated connection to the removal of an alien' ... [or] preclude review of claims that 'cannot be raised efficaciously within the administrative proceedings' already available.").
[23] *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999), (finding that it would be "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings."); *see also Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (noting that interpreting 1252(b)(9) broadly would render "claims of prolonged detention effectively unreviewable.").
[24] *Santiago v. Noem*, No. EP-25-CV-361-KC, 2025 WL 2792588, at *9.
[25] *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (cleaned up)

challenge her present detention.[26] Thus, the instant petition sits properly within this Court's jurisdiction.[27]

### III. Analysis

The parties dispute whether Respondents have statutory authority to detain Petitioner and whether her detention violates the Due Process Clause of the Fifth Amendment. The Court considers each of these in turn.

#### a. Statutory Authority to Detain Petitioner

Petitioner first argues that she cannot be placed into expedited removal under § 1225(b)(1) because she is already in full removal proceedings under § 1229a and cannot be in two proceedings at once.[28]

Respondents point to the Board of Immigration Appeals decision *Matter of M-S-*, which maintains that applicants for asylum are not eligible for bond "even if they are later transferred to full proceedings after establishing a credible fear."[29] Therefore, Respondents conclude Petitioner's current detention is nondiscretionary even if she is in "full" removal proceedings under 1229a.[30]

Respondents provide a persuasive argument that § 1225(b)(1)(B)(ii) may subject applicants for asylum to mandatory detention without bond even when they are placed in "full" removal proceedings under § 1229a. However, the Court declines to assess the merits of this argument, as it is irrelevant to the case at hand. Petitioner was released on humanitarian parole under 8 U.S.C.

---

[26] Dkt. No. 8, at 3.
[27] *See Jennings*, 583 U.S. at 291–96, (2018) ("The question is not whether *detention* is an action taken to remove an alien but whether *the legal questions* in this case arise from such an action ….").
[28] Dkt. No. 1, at 10–11.
[29] *Matter of M-S-*, 27 I&N Dec. 509, 516 (2019); *see also Thuraissigian*, 591 US at 140 (finding that mandatory detention without a bond hearing is under 1225 (b)(1)(B)(ii) is constitutional)
[30] Dkt. No. 8, at 2–3.

§ 1182(d)(5)(A), not bond. Even the case that Respondents rely upon acknowledges the significance of this distinction, noting:

> The conclusion that section 235 requires detention does not mean that every transferred alien must be detained from the moment of apprehension until the completion of removal proceedings. Section 212(d)(5)(A) of the Act separately provides that "any alien applying for admission" may be "parole[d] into the United States . . . for urgent humanitarian reasons or significant public benefit.[31]

Unlike bond, which is authorized by an Immigration Judge, humanitarian parole is granted at DHS's discretion. A term of humanitarian parole expires "when the purposes of such parole . . . have been served," at which point the alien must "return or be returned to . . . custody."[32] Parole may terminate automatically if a parolee departs from the United States but otherwise may only be terminated upon written notice after an authorized DHS official determines that "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States."[33]

Petitioner argues that because her parole was granted "pending a final decision in [her] exclusion/deportation proceedings,"[34] its purpose will not be achieved until her asylum hearing.[35] Petitioner argues, and the Court agrees, that she is not subject to automatic termination of parole because she has not departed from the United States, and her parole has not expired.[36] Thus, Petitioner argues that because DHS re-detained her without notice or an individualized determination in violation of its own regulations, her detention is unlawful. The Court agrees.

---

[31] *M-S-*, 27 I&N Dec. at 516–17.
[32] 8 U.S.C. § 1182(d)(5)(A).
[33] 8 C.F.R. § 212.5(e)(1)–(2).
[34] Dkt. No. 1, Exh. 1.
[35] Dkt. No. 1, at 9.
[36] *See* 8 C.F.R. § 212.5(e).

Though DHS has broad discretion to revoke humanitarian parole, that discretion is not unlimited, and many district courts to recently consider the issue have found that the statute implicitly requires at least some degree of an individualized, pre-arrest assessment.[37]

The current record does not indicate that the objective of Petitioner's parole has been satisfied, or that her parole was terminated before her arrest. Respondents failed to provide Petitioner with a notice of revocation or any justification for her re-detention. Respondents have not even attempted to argue that the requirements for terminating parole under § 1182(d)(5)(A) have been met, and nothing before the Court suggests that the humanitarian or public-interest grounds underlying Petitioner's grant of parole ceased to exist. Accordingly, the Court concludes that Respondents have detained Petitioner unlawfully in violation of 8 C.F.R. § 212.5(e).

    b. **Due Process**

The Court turns to Petitioner's final argument, that her re-detention violates her right to due process.[38]

Respondents do not state any individualized justification for revoking Petitioner's humanitarian parole. In fact, Respondents do not indicate that Petitioner's parole was ever revoked at all. Respondents instead state, without elaboration, that they have satisfied the *de minima* requirements of Petitioner's procedural due process.[39]

Under *Mathews v. Eldridge*,[40] a court must determine whether a civil detention violates a detainee's due process rights by considering: (1) the private interests affected by the government action; (2) the risk of erroneous deprivation of those interests through the procedures used and the

---

[37] *See, e.g.*, PADILLA HERNANDEZ, v. RAYCRAFT et al., No. 1:25-CV-1719, 2025 WL 3730936 at *5 (W.D. Mich. Dec. 26, 2025) (collecting cases).
[38] Dkt. No. 1, at 11–13.
[39] Dkt. No. 8, at 6-7.
[40] *Mathews v. Eldridge*, 424 U.S. 319 (1976)

probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."[41] "The essence of procedural due process is that a person risking a serious loss be given notice and an opportunity to be heard in a meaningful manner and at a meaningful time."[42]

      **i.  Private Interest**

"The interest in being free from physical detention' is 'the most elemental of liberty interests.'"[43] This Court has found criminal parolees' entitlement to a pre-deprivation hearing based on their reasonable expectation of continued liberty to be "informative" in the civil immigration context.[44] As civil immigration detention is nonpunitive in nature,[45] the Court sees no justification for concluding that an asylum applicant on parole has less of an interest in her freedom from physical restraint than any other parolee. Because she has spent nearly two years at liberty in the United States on parole, the Court concludes that Petitioner has a cognizable interest in her freedom from arbitrary re-detention.

      **ii. Risk of Erroneous Deprivation**

When assessing the risk that an individual's liberty interests may be erroneously deprived, courts consider the sufficiency of the challenged procedures and "the degree to which alternative procedures could ameliorate those risks."[46] The Supreme Court has found that civil immigration detention comports with due process only when a "special justification" outweighs the

---

[41] *Mathews*, 424 U.S. at 335.
[42] *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 685 (W.D. Tex. 2025) (internal citations omitted).
[43] *Martinez v. Noem*, 2025 WL 2598379, at *2 (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)).
[44] *Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828, at *11 (internal citations omitted).
[45] *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).
[46] *Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828, at *11 (quoting *Gunaydin v. Trump*, 784 F.Supp.3d 1175, 1187 (D. Minn. 2025)).

"individual's constitutionally protected interest in avoiding physical restraint."[47] Petitioner's original release from detention was conditioned on Respondents' finding that her parole served a humanitarian purpose or public benefit. Respondents provide nothing to suggest that the motivation underlying Petitioner's original release no longer exists, or that an authorized official considered this question before Petitioner's arrest. Respondents fail to indicate that even single procedural safeguard existed to ensure that Petitioner's detainment was justified in light of her humanitarian parole. Considering this, the Court concludes that the risk of erroneous deprivation under Respondents' current procedural processes appears high. Thus, the second factor weighs in Petitioner's favor.

### iii. Government Interest

Respondents do not identify an interest in Petitioner's detention beyond claiming that it is mandatory. The Court acknowledges that the government has generalized interests in enforcing immigration law, ensuring that individuals appear at their immigration proceedings, and avoiding unnecessary incremental costs.[48] However, the Court finds that the burden of providing notice upon an individualized assessment in accordance with agency regulations cannot be so great as to warrant the eschewing of such regulations altogether. Therefore, this factor also weighs in Petitioner's favor that she has been denied procedural due process.

Finding that all three *Mathews* factors weigh in Petitioner's favor, the Court finds that Petitioner's detention without any notice or an individualized assessment deprives her of the constitutional right to procedural due process under the Fifth Amendment of the United States Constitution.

---

[47] *Zadvydas*, 533 U.S. at 690.
[48] *Ripa*, No. EP-25-CV-337-KC, 2025 WL 2691828 at *686–87.

## CONCLUSION

Accordingly, the Petition for Habeas Corpus is **GRANTED**. It is **ORDERED** that:

1. Respondents **RELEASE** Petitioner from custody, under appropriate conditions of release, to a public place by **no later than January 17th 2026, at 2 p.m.;**

2. Respondents **NOTIFY** Petitioner's counsel of the exact location and exact time of Petitioner's release as soon as practicable and no less than two hours before her release;

3. If Petitioner is re-detained pursuant to Section 1226, all applicable procedures must be followed, including that Petitioner be afforded a bond hearing;

4. The parties shall **FILE** a Joint Status Report **no later than 4:00 p.m. on January 19, 2026**, confirming that Petitioner has been released.

A final judgment will issue separately.

IT IS SO ORDERED.
DONE this 16th day of January, 2026, in San Antonio, Texas.

_____
MICAELA ALVAREZ
SENIOR UNITED STATES DISTRICT JUDGE